UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEON TERRELL HENRY,

       Plaintiff,

                             CASE NO. 2:11-CV-10192
   v.                      JUDGE ARTHUR J. TARNOW
                             MAGISTRATE JUDGE PAUL KOMIVES

CITY OF EASTPOINTE POLICE
DEPARTMENT, LIEUTENANT
LEO BOROWSKI, DETECTIVE
CONNOR, and DETECTIVE TEOLIS,

       Defendants.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (docket #53)**

I.       RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    *General Legal Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
          1.    *Summary Judgment Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
          2.    *Civil Rights Claims Under § 1983* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      C.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          1.    *Illegal Arrest Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
               a. Collateral Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
               b. Merits of the Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          2.    *Excessive Force Claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
               a. Excessive Force Claims Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
               b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               c. Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
          3.    *Claims Against Defendants Borowski and City of Eastpointe* . . . . . . . . . . . . . . . . . . 22
               a. Defendant Borowski . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
               b. City of Eastpointe . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
      D.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

\*      \*      \*      \*      \*

I.       <u>RECOMMENDATION</u>: The Court should grant in part and deny in part defendants' motion

for summary judgment.  Specifically, the Court should grant summary judgment to defendants

Borowski and Eastpointe Police Department on all of plaintiff's claims and to defendants Connor

and Teolis on plaintiff's illegal search and arrest claims. The Court should deny summary judgment to defendants Connor and Teolis on plaintiff's excessive force claims. If the Court accepts this recommendation, the Court should also order that, to the extent he has not already done so, plaintiff provide to defendants signed authorizations for the release of his medical records forthwith, and should warn plaintiff to that his failure to do so may result in dismissal of his excessive force claim pursuant to FED. R. CIV. P. 37(b)(2).

II.     REPORT:

A.      *Background*

        Plaintiff Deon Terrell Henry, currently a state inmate, commenced this action on January 14, 2011, by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Defendants are the City of Eastpointe Police Department and three of its officers: Lieutenant Leo Borowski, Detective Patrick Connor, and Detective Teolis. Plaintiff asserts claims based on the Fourth Amendment arising from his arrest by defendants Connor and Teolis. Specifically, he claims that his arrest was unlawfully made, and that defendants Connor and Teolis used excessive force in effectuating his arrest. He asserts a supervisory liability claim against defendant Borowski, and a municipal liability claim against the City of Eastpointe Police Department. The basic facts are not in dispute.

        On the morning of January 12, 2008, Eastpointe Police Officer Matthew Hambright, while on patrol in the area of Gratiot Avenue north of Eight Mile Road, pulled over a vehicle driven by a man later identified as petitioner. According to Officer Hambright's report, the car was traveling approximately 20 mile per hour over the speed limit, and in conducting the traffic stop Hambright noted a strong odor of marijuana emanating from the vehicle. Hambright asked for plaintiff's driver's licence several times. Plaintiff eventually began to reach under the seat, and Hambright

2

yelled at plaintiff to stop and reached in through the open window of the car and grabbed plaintiff's shoulder.  Plaintiff rolled up the window on Hambright's arm and accelerated forward, dragging Hambright several hundred yards.  Hambright was eventually able to free himself, and rolled into the intersection of Gratiot and Eight Mile.  *See* Def.'s Br. in Supp. of Mot. for Summ. J., Ex. A; Ex. B, at 51-58.  Plaintiff drove off into the City of Detroit.  The car plaintiff was driving was found abandoned in Detroit.  Eastpointe police officers identified and located the registered owner of the vehicle, who informed them that she had given the car to plaintiff two days prior, and that plaintiff was staying at his grandfather's house on Wisconsin Street in Detroit.  *See* Def.'s Br., Exs. C-D; Compl., ¶¶ 18-19.  Upon receiving this information, defendant Connor sought and obtained from defendant Borowski permission to located plaintiff in the City of Detroit.  He and defendant Teolis proceeded to the address they had been given.  The door was answered by Janice Henry, plaintiff's mother.  According to defendants, Ms. Henry allowed them to enter her home, and told them that plaintiff was asleep upstairs.  *See* Def.'s Br., Ex. E.  According to Ms. Henry, the officers entered her home without permission, brandishing their weapons at her and the other occupants of the house.  *See* Pl.'s Br., Ex. A.  Defendants Connor and Teolis located plaintiff in an upstairs storage area, hiding under a blanket.  The detectives ordered plaintiff to show his hands.  When he refused to do so, defendant Connor deployed his Taser.  After plaintiff again refused to show his hands, defendant Connor deployed the Taser a second time. According to the officers, plaintiff continued to struggle with as they attempted to place him in handcuffs. Plaintiff contends that the detectives delivered approximately eight closed-fist blows and ten kicks.  *See* Def.'s Br., Ex. E; Compl., ¶¶ 21-22.

Following a preliminary examination in state district court, plaintiff was bound over for trial on several charges.  Plaintiff was tried in the Macomb County Circuit Court, and was convicted of

assault with intent to commit great bodily harm less than murder; fleeing and eluding; assaulting a police officer in the performance of his duties; and driving with a suspended licence, and was sentenced to concurrent sentences, the most severe of which imposed a term of 60-120 months' imprisonment. Plaintiff's conviction and sentences were affirmed on appeal. *See People v. Henry*, No. 286415, 2009 WL 2913901 (Mich. Ct. App. Sept. 10, 2009) (per curiam).

The matter is currently before the Court on defendants' motion for summary judgment, filed on May 29, 2012. Defendants contend that they are entitled to summary judgment on plaintiff's illegal arrest claim because that claim is barred by collateral estoppel and because plaintiff has no evidence that his arrest was unlawful. Defendants further contend that there is no genuine issue of material fact with respect to plaintiff's excessive force claim, and alternatively that this claim should be dismissed based on plaintiff's failure to provide discovery. Finally, defendants contend that plaintiff's supervisory liability and municipal liability claims against defendant Borowski and the City, respectively, fail as a matter of law. Plaintiff filed a response to the motion on July 10, 2012, and defendants filed a reply on July 26, 2012. For the reasons that follow, the Court should grant in part and deny in part defendants' motion for summary judgment.

B.    *General Legal Standards*

   1.    *Summary Judgment Standard*

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact

is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52

(citing *Anderson*, 477 U.S. at 248).  In deciding a motion for summary judgment, the Court must

view the evidence in a light most favorable to the non-movant as well as draw all reasonable

inferences in the non-movant's favor.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603,

613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

"The moving party has the initial burden of showing the absence of a genuine issue of

material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451

(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  To meet this burden, the moving party

need not produce evidence showing the absence of a genuine issue of material fact.  Rather, "the

burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district

court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*,

477 U.S. at 325; *see also*, Fed. R. Civ. P. 56(c)(1) (moving party may meet its burden by "citing to

particular parts of materials in the record" or by "showing that the materials cited do not establish

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

evidence to support the fact.").  "Once the moving party satisfies its burden, 'the burden shifts to the

nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell

Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 587 (1986)); *see also*, Fed. R. Civ. P. 56(e).  To create a genuine issue of

material fact, however, the non-movant must do more than present some evidence on a disputed

issue.  As the Supreme Court has explained, "[t]here is no issue for trial unless there is sufficient

evidence favoring the nonmoving party for a jury to  return a verdict for that party.  If the [non-

movant's] evidence is merely colorable, or is not significantly probative, summary judgment may

be granted." *Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

2.      *Civil Rights Claims Under § 1983*

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). It is well established that liability in a § 1983 action cannot be based on a theory of *respondeat superior. See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998).

C.      *Analysis*

1.      *Illegal Arrest Claim*

Plaintiff claims that his arrest was illegal under the Fourth Amendment because defendants Connor and Teolis illegally entered the home and arrested him without a warrant.  Defendants are entitled to summary judgment on this claim because his claim that his arrest was illegal is barred by collateral estoppel.  Alternatively, the claim is without merit as a matter of law.

*a.  Collateral Estoppel*

The doctrine of issue preclusion, or collateral estoppel, mandates that "'[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'"  *See Heyliger v. State Univ. & Community College Sys. of Tenn.*, 126 F.3d 849, 853 (6th Cir. 1997) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982)).  The Full Faith and Credit Clause of the Constitution commands that "[f]ull Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State."  U.S. CONST. art. IV, § 1.  Pursuant to the grant of authority in Article IV, § 1, Congress has implemented this command through the Full Faith and Credit Act, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they would have by law or usage in the courts of such State . . . from which they are taken."  28 U.S.C. § 1738.  As the Supreme Court has explained, "[t]his statute directs a federal court to refer to the preclusion law of the State in which the judgment was rendered."  *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *see also*, *In re Fordu*, 201 F.3d 693, 703 (6th Cir. 1999).  Thus when, as here, a federal court considers

7

the preclusive effect of a prior state court judgment, the court must "give the prior adjudication the same preclusive effect it would have under the law of the state whose court issued the judgment. *See Heyliger*, 126 F.3d at 852 (citing *Migra v. Warren City Sch. Dist.*, 465 U.S. 75, 81 (1984); *Allen v. McCurry*, 449 U.S. 90, 96 (1980)).   Accordingly, the Court must look to Michigan law to determine the preclusive effect of the prior state court judgment at issue here.

The Sixth Circuit has recently explained the elements of collateral estoppel under Michigan law:

> As a general rule, Michigan courts will apply collateral estoppel when: "(1) a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment; (2) the same parties ... had a full [and fair] opportunity to litigate the issue; and (3) there [is] mutuality of estoppel." *Monat v. State Farm Ins. Co.*, 469 Mich. 679, 677 N.W.2d 843, 845-46 (Mich. 2004) (citation, footnote, and internal quotation marks omitted). However, mutuality of estoppel is "not required when collateral estoppel [is] being used defensively," *Gilbert v. Ferry*, 413 F.3d 578, 581 (6th Cir. 2005) (per curiam) (citing *Monat*, 677 N.W.2d at 850).
>
> Thus, when collateral estoppel "is asserted defensively to prevent a party from relitigating an issue that such party has already had a full and fair opportunity to litigate in a prior suit," *Monat*, 677 N.W.2d at 850, the elements of the Michigan law of issue preclusion may be further distilled. As the Sixth Circuit has noted, when arguing for the application of defensive collateral estoppel in Michigan courts, the party seeking to accord preclusive effect to a prior court determination must establish that:
>
>> 1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding.
>
> *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *People v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 630-31 (Mich. 1990)).

*Autrey v. Stair*, ___ F.3d ___, ___, 2013 WL 331560, at *5-*6 (6th Cir. Jan. 29, 2013) (alterations in original).

Here, defendants' argument that the trial verdict has preclusive effect is without merit. Amongst the other charges, plaintiff was charged with and convicted of resisting or obstructing an

officer in the performance of his official duties under MICH. COMP. LAWS § 750.81d(1). Defendants correctly note that, under Michigan law as recently clarified by the Michigan Supreme Court, the lawfulness of the officer's arrest is an element of the offense that must be proved by the prosecution. *See People v. Moreno*, 491 Mich. 38, 51-52, 814 N.W.2d 624, 631 (2012). However, at the time of plaintiff's state court trial the prevailing view was reflected in the Michigan Court of Appeals's decision in *People v. Ventura*, 262 Mich. App. 370, 686 N.W.2d 748 (2004), which held that the legality of an arrest is *not* an element of § 750.81d. *See Ventura*, 262 Mich. App. at 375-77, 686 N.W.2d at 751-52. The Michigan Court of Appeals adhered to this view up until the Michigan Supreme Court's decision in *Moreno*, a time period which included plaintiff's trial. *See Brooks v. Rothe*, 577 F.3d 701, 707 (6th Cir. 2009); *People v. Corr*, 287 Mich. App. 499, 509, 788 N.W.2d 860, 867 (2010). Thus, under the law governing at the time of plaintiff's trial, it was not necessary for the prosecutor to prove that the arrest was lawful. Defendants have provided no evidence, such as the instructions given to the jury defining the elements of the offense, to show that the lawfulness of the arrest was actually litigated and necessarily determined by the jury's verdict. Thus, the verdict in the criminal trial does not preclude plaintiff's illegal arrest claim.

Nevertheless, plaintiff's claim is precluded because the issue was actually litigated and necessarily determined at the preliminary examination. At the conclusion of that hearing, the district judge expressly found that the officers' entry was with the consent of plaintiff's mother, and therefore lawful. *See* Def.'s Br., Ex. J, at 61. Because this issue was expressly determined against plaintiff at the preliminary examination, collateral estoppel bars relitigating the issue here. *See Redmond v. Sanders*, 858 F. Supp. 2d 809, 815 (E.D. Mich. 2012) (Rosen, J.). Further, plaintiff had a full and fair opportunity to litigate this issue at the preliminary examination. Under Michigan law,

at the examination plaintiff had the right to "subpoena witnesses, offer proofs, and examine and cross-examine witnesses." MICH. CT. R. 6.110(C). Thus, plaintiff is precluded from relitigating the lawfulness of his arrest. *See generally*, *Darrah v. City of Oak Park*, 255 F.3d 301, 310-11 (6th Cir. 2001) (findings at preliminary examination have preclusive effect where elements of collateral estoppel are satisfied).

### b. Merits of the Claim

Even if plaintiff's illegal arrest claim is not barred by collateral estoppel, plaintiff has failed to raise a genuine issue of material fact with respect to whether his arrest was unlawful. It is well established that although "the Fourth Amendment generally 'prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest,' . . . a warrant is not required when the officers obtain consent to enter from the suspect or 'from a third party who possesses common authority over the premises.'" *United States v. Stokes*, 631 F.3d 802, 807 (6th Cir. 2011) (quoting, respectively, *Payton v. New York*, 445 U.S. 573, 576 (1980) and *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990)). Defendant Connor avers that plaintiff's mother consented to their entry into the home. *See* Def.'s Br., Ex. E, ¶ 5. At his deposition, plaintiff testified that he was not aware of the police until they woke him up, and that he did not know how they got into the house. *See id.*, Ex. K, at 97-98. Plaintiff has submitted the affidavit of his mother, dated March 22, 2010, and apparently executed in connection with his state court criminal appeal, in which she avers that the police did not obtain her consent to enter. *See* Pl.'s Br., Ex. A. Ordinarily, this would create a genuine issue of material fact for the jury to decide. However, it is clear that Ms. Henry is no longer willing to testify as to the facts set forth in her affidavit. At his deposition in this case, conducted on July 13, 2011, plaintiff testified that he has no witnesses to

10

support his claim that the officers' entry into his home was illegal, and specifically testified that his mother was no longer willing to testify on his behalf in this case. *See* Def.'s Br., Ex. K, at 187. By plaintiff's own testimony, then, it is clear that plaintiff's mother will not be called by him at a trial in this case and that he can present no evidence in support of his illegal arrest claim other than the police reports and trial transcript. In *Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004), the Court declined the defendant municipality's request to disregard the 14-year-old affidavits because the defendant had not proffered any evidence that the witnesses "were no longer available, willing, or otherwise competent to testify at trial," *id*. at 131, implying that the existence of such evidence would justify disregarding the affidavits. Here, plaintiff's own testimony establishes that his mother is "no longer . . . willing . . . to testify at trial," and justifies disregarding Ms. Henry's affidavit. Thus, plaintiff can present no evidence to create an issue of material fact with respect to whether defendants had Ms. Henry's consent to enter the home and search for plaintiff.

Likewise, the fact that plaintiff was arrested without a warrant does not establish a Fourth Amendment violation. As a general rule, a felony arrest complies with the Fourth Amendment so long as the police have probable cause to believe that the person being arrested has committed a felony; the Fourth Amendment does not also require police to obtain a warrant. *See United States v. Watson*, 423 U.S. 411, 423-24 (1976); *United States v. Fullerton*, 187 F.3d 587, 591 n.3 (6th Cir. 1999). And although defendants ordinarily would have been required to obtain a warrant to arrest him in his home, as explained above that need was obviated in this case by the consent given by plaintiff's mother. *See Stokes*, 631 F.3d at 807. Accordingly, even if plaintiff's illegal arrest claim is not barred by collateral estoppel, defendants are entitled to summary judgment on the merits.

  2. *Excessive Force Claim*

Plaintiff also contends that defendants Connor and Teolis used excessive force in effectuating his arrest. The Court should conclude that defendants Connor and Teolis are not entitled to summary judgment on this claim.

### a. Excessive Force Claims Generally

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. CONST. amend. IV. In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that all claims that police officers used excessive force should be analyzed under the Fourth Amendment. In analyzing such a claim, the court should apply a standard of objective reasonableness. *Id*. at 395-96. This test

> requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id*. at 396; *see also*, *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, 'its proper application requires careful attention to the facts and circumstances of each particular case.'" *Bell v. Porter*, 739 F. Supp. 2d 1005, 1010-11 (W.D. Mich. 2010) (quoting *Graham*, 490 U.S. at 396). In addition to the underlying historical facts of what happened during the arrest, determination of which is of course a jury question, "[w]hether the amount of force used was reasonable is usually a question of fact to be determined by the jury." *Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th Cir. 1994); *see also*, *Dominguez v. Metropolitan Miami-Dade County*, 167 Fed. Appx. 147, 150 (11th Cir.

12

2006); *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999); *Trethewey v. Stimac*, No. 2:08-CV-12156, 2010 WL 3583082, at *4 (E.D. Mich. Aug. 9, 2010) (Komives, M.J.), *magistrate judge's report adopted*, 2010 WL 3583049 (E.D. Mich. Sept. 9, 2010) (Rosen, J.), *aff'd*, 431 Fed. Appx. 432 (6th Cir. 2011). Thus, summary judgment is appropriate only "where the plaintiff fails to offer any evidence that the officer used force or if, accepting the plaintiff's version of events, no reasonable jury could conclude that the officer's use of force was unreasonable." *Trethewey*, 2010 WL 3583082, at *4 (citing *Landy v. Irizarry*, 884 F. Supp. 788, 798 (S.D.N.Y.1995) (citing cases)); *see also*, *Abraham*, 183 F.3d at 290; *Ferraresso v. Town of Granby*, 646 F. Supp. 2d 296, 306 (D. Conn. 2009).

### b. Analysis

Here, the parties present vastly different accounts regarding the force used to effectuate plaintiff's arrest. Plaintiff avers in his affidavit that both of his hands "were in the air in a surrendering state before Detective Connor tasered" him. *See* Pl.'s Resp., Ex. E, ¶ 4. He also avers that "Detective Connor and Teolis deliberately kicked and punched" him for no reason while he was on the floor after being incapacitated by the Taser. *See id.*, ¶ 6. Plaintiff further denies that he was being combative or that he struggled with defendants during the arrest process. *See id.*, ¶¶ 7-8. To be sure, defendants present a different version of events, contending that plaintiff refused to show his hands, necessitating the use of the Taser, and denying that they punched or kicked him during the encounter. Under plaintiff's version of events, however, a jury could find that defendants used excessive force in effectuating his arrest. Under this version, plaintiff had shown his hands prior to the deployment of the Taser, and was not resisting at any time during the encounter. Further, both a Taser and repeatedly punching or kicking represent significant uses of force. Under these facts,

13

a jury could conclude that defendants' use of force was objectively unreasonable under the circumstances. *See Lee v. Metropolitan Gov't of Nashville & Davidson County*, 596 F. Supp. 2d 1101, 1117 (M.D. Tenn. 2009); *Perach v. Lee*, No. 08-13754, 2009 WL 3190414, at *6 (E.D. Mich. Sept. 30, 2009) (Cook, J.); *Michaels v. City of Vermillion*, 539 F. Supp. 2d 975, 986-87 (N.D. Ohio 2008).[1]

Defendants offer several arguments to counter this conclusion. First, they contend that plaintiff's admissions conclusively establish that the force used by defendants was reasonable. In response to defendants' Requests for Admission, plaintiff initially provided an unsigned, undated response. Defendants contend that this resulted in the matters asserted in the Requests being deemed admitted. *See* FED. R. CIV. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."). This argument was implicitly rejected by my February 14, 2012 Order, in which I granted defendants' motion to compel and to deem admitted defendants' requests for admission *only* to the extent that the motions sought written answers to the discovery requests served by defendant. I further directed that plaintiff's responses must comply with, *inter alia*, Rule 36(a), and plaintiff served answers to the requests to admit complying with the Rule on February 27, 2012. Further, considering the matter anew, the Court should not deem admitted defendants' requests for admission. Notwithstanding the language quoted above, Rule 36(a)(3), also provides that a court may allow a longer time for the answering

---

[1]In their reply, defendants note that plaintiff admitted in his deposition that his body was underneath a blanket when they first attempted to arrest him, that he refused commands to show his hands, and that he was slow to respond to their commands. This testimony, however, does not contradict plaintiff's affidavit. While plaintiff admitted that he initially refused requests to show his hands, he also testified, consistent with his affidavit, that he had placed both of his hands in the air prior to the Taser being deployed. *See* Def.'s Reply, Ex. 4, at 105.

of requests to admit, and Rule 36(b) authorizes a court to allow a party to withdraw matters previously admitted.  Taken together, these two provisions establish that the sanction contemplated by Rule 36(a) is not mandatory, and that a court has discretion to permit a late filed response.  *See Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Tripodi*, 913 F. Supp. 290, 293-94 (S.D.N.Y. 1996); *United States v. Turk*, 139 F.R.D. 615, 617 (D. Md. 1991); *see also*, *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1312 (8th Cir. 1983) ("Because the district court has the power to allow a longer time, courts and commentators view this to mean that the court, in its discretion, may permit the filing of an answer that would otherwise be untimely.").  Generally, a court should permit a late response, or allow the withdrawal of previous admissions, "when (1) the presentation of the merits will be aided and (2) no prejudice to the party obtaining the admission will result."  *Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir. 1983); *see also*, *Clark v. City of Munster*, 115 F.R.D. 609, 612 (N.D. Ind. 1987).  Further, the prejudice contemplated by the rule "is not that the party who obtained the admission will have to convince the jury of the truth of the matter.  'The prejudice contemplated by the rule relates to the difficulty a party may face because of the sudden need to obtain evidence required to prove the matter that had been established.'"  *Ropfogel v. United States*, 138 F.R.D. 579, 583 (D. Kan. 1991) (quoting *Gutting*, 710 F.2d at 1314).  Here, allowing plaintiff's response certainly aids in the presentation of the merits, and there is no claim that defendants had been prejudiced in the ability to obtain evidence, particularly given that plaintiff did provide unsigned answers to the requests for admission.  In these circumstances, it is appropriate to allow plaintiff's late-filed responses to stand.  *See American Petro, Inc. v. Shurtleff*, 159 F.R.D. 35, 37-38 (D. Minn. 1994); *Clark*, 115 F.R.D. at 612.

Defendants further contend that plaintiff's claim should be dismissed pursuant to Rule

37(b)(2) because plaintiff failed to provide court ordered discovery–namely, authorizations for the release of his medical records.  Ordering dismissal or default[2] to sanction a party to the litigation is usually reserved for situations akin to contempt of court or other abusive practices.  *See, e.g., Chambers v. NASCO*, 501 U.S. 32, 45-46 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980).  Generally, this sanction is not available unless the conduct of the complaining party was done willfully, maliciously, or in bad faith.  *See, e.g., National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 640 (1976) (per curiam).  Before imposing a sanction of dismissal or default, a court should consider the prejudice to the complaining party, the degree of the wrongdoer's culpability, the availability of other measures to redress the problem, and the societal interest in the efficient administration of justice.  *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462-63 (4th Cir. 1993), *cited with approval by Coleman v. American Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994).  As the Sixth Circuit has summarized, in determining whether dismissal is an appropriate sanction for failure to comply with discovery orders, a court should consider four factors:

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the [offending] party's failure to cooperate in discovery; the third factor is whether the [offending] party was warned that failure to cooperate could lead to dismissal; and the fourth factor is whether less drastic sanctions were imposed or considered before dismissal [is] ordered.

*Bass v. Jostens, Inc.*, 71 F.3d 237, 241 (6th Cir. 1995); *accord Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990).  "Consideration of these factors should be given with reference

---

[2]The Court applies the same standard to determine whether default is an appropriate sanction as it does to determine whether dismissal is appropriate.  *See Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1073 (6th Cir. 1990); *Bratka v. Anheuser-Busch Co.*, 164 F.R.D. 448, 459-60 (S.D. Ohio 1995); *In re Sams*, 123 B.R. 788, 790 (Bankr. S.D. Ohio 1991).

to the dual purposes underlying the use of dismissal as a sanction for willful noncompliance with discovery, namely, of punishing the offending party and deterring future litigants from engaging in similar misconduct." *Reese Corp. v. Rieger*, 201 B.R. 902, 907 (E.D. Mich. 1996) (citing *Bass*, 71 F.3d at 241). Further, all these factors must be weighed against the strong policy that favors disposition of cases on their merits. *See Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993); *see also, Shaffer Equip.*, 11 F.3d at 462; *Reese Corp.*, 201 B.R. at 907 ("Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on the merits is dismissal appropriate.") (citing *Meade v. Grubbs*, 841 F.2d 1512, 1520 n.7 (10th Cir. 1988)).

Here, regardless of the balance of relevant factors, weighed against the strong policy favoring merits dispositions, compels the conclusion that dismissal of plaintiff's excessive force claims is not appropriate. Irrespective of the first factor, there is no indication that defendants' will be prejudiced in defending against plaintiff's claims once they obtain plaintiff's medical records. That is, there is no indication on the current record that a delay in obtaining the records will be prejudicial. Further, plaintiff has not previously been warned that a failure to provide the authorizations could lead to dismissal, and no other lesser sanctions have been imposed and been shown to be ineffective. In these circumstances, dismissal is not an appropriate sanction. The Court should, however, order plaintiff to provide signed authorizations forthwith (to the extent he has not already done so), and should explicitly warn plaintiff that his failure to do so could result in the dismissal of some or all of his claims.

Finally, in their reply, defendants contend that plaintiff's excessive force claim is precluded by the rule of *Heck v. Humphrey*, 512 U.S. 477 (1994). This argument fails for two reasons. First, it is generally inappropriate to grant summary judgment on a ground first raised in a reply brief

17

without providing the nonmoving party an opportunity to respond.  *See Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 481-82 (6th Cir. 2002).  Second, the argument fails on the merits.  Where a state prisoner challenges the validity of his or her conviction, a federal court must be on guard against upsetting the delicate balance between state and federal judicial power by usurping the role of the state appellate courts.  *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971); *Foster v. Kassulke*, 898 F.2d 1144, 1146-47 (6th Cir. 1990).  The Court should also be wary of § 1983 being "used to make an end run around habeas corpus procedures."  *Foster*, 898 F.2d at 1148.  With these concerns in mind, the Supreme Court has held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, of for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated *is not cognizable under § 1983*.

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (footnote omitted) (second emphasis added).  This rule limits the intrusion of § 1983 actions into areas properly reserved for habeas review "in a manner consistent both with the federalism concerns undergirding the explicit exhaustion requirement of the habeas statute, and with the state of the common law at the time § 1983 was enacted."  *Id.* at 491 (Thomas, J., concurring) (citations omitted).  Thus, in analyzing whether a claim is barred by the *Heck* rule, a court "must consider whether a judgment in favor of the plaintiff would *necessarily* imply the invalidity of his conviction or sentence."  *Id.* at 487 (emphasis added).  The *Heck* rule is not dependent upon plaintiff's characterization of his claim, nor is the applicability of the rule limited to situations in which a plaintiff purports to directly challenge his conviction.  Rather, the *Heck* rule is applicable whenever success on a claim–no matter how characterized by the

18

plaintiff–would necessarily imply that his conviction is invalid. As the Court explained in *Heck*, the rule set down in that case applies where "establishing the basis for the damages claims necessarily demonstrates the invalidity of the conviction," *Heck*, 512 U.S. at 481-82, and extends to claims seeking damages not only for wrongful conviction but also "for other harms caused by actions whose unlawfulness would render a conviction or sentence invalid." *Id*. at 486. Thus, if plaintiff's claims would necessarily imply that his conviction is invalid, his claims are barred by *Heck* notwithstanding the fact that plaintiff did not mention the conviction in his complaint and does not directly challenge that conviction.

Here, success on plaintiff's excessive force claim would not necessarily imply that his conviction for resisting arrest was invalid. Defendants, relying on *Moreno*, note that the lawfulness of an arrest is an element of the offense under § 750.81d, and that an arrest accomplished through the use of excessive force is unlawful. Therefore, they argue, a showing that excessive force was used would negate an element of the offense for which plaintiff was convicted and would accordingly necessarily imply the invalidity of his conviction. Whatever the merit of this argument post-*Moreno*, plaintiff was convicted when *Ventura* provided the governing law. And as explained above, under *Ventura* the lawfulness of an arrest was not an element of § 750.81d. Thus, even if success on an excessive force claim would necessarily imply the invalidity of a post-*Moreno* § 750.81d conviction, *see Cummings v. Lewis*, No. 303386, 2012 WL 2579678, at *2 n.3 (Mich. Ct. App. July 3, 2012) ("Moreno does not stand for the proposition that excessive force is an affirmative defense to resisting a lawful arrest. Rather it stands for the rule that MCL 750.81d did not abrogate the common-law right to resist unlawful arrests and unlawful entries. Defendant does not cite any case law in support of th[e] proposition [that excessive force renders an arrest unlawful], and we do

19

not read our Supreme Court's decision in *Moreno* to compel such a ruling."), it does not necessarily imply the invalidity of a post-*Ventura*, pre-*Moreno* conviction such as plaintiff's conviction.  *See Cummings*, 2012 WL 2579678, at *2 & n.3 (refusing to apply *Heck* where *Ventura* controlled at the time of plaintiff's conviction); *see also*, *Karttanen v. Clark*, 369 Fed. Appx. 705, 708 (6th Cir. 2010); *Schreiber v. Moe*, 596 F.3d 323, 334-35 (6th Cir. 2010); *Rogers v. Detroit Police Dep't*, 595 F. Supp. 2d 757, 769-70 (E.D. Mich. 2009) (Ludington, J., adopting recommendation of Binder, M.J.).  Thus, *Heck* does not bar plaintiff's excessive force claim.

Because plaintiff has presented evidence which, if believed, would warrant a jury in concluding that defendants Connor and Teolis used excessive force in violation of the Fourth Amendment, the Court should deny defendants' motion for summary judgment with respect to plaintiff's excessive force claim against these two defendants.

### c.  Qualified Immunity

In their motion for summary judgment, defendants argue that they are entitled to qualified immunity.   "Under § 1983 . . . , a plaintiff may seek money damages from government officials who have violated her constitutional or statutory rights.  But to ensure that fear of liability will not unduly inhibit officials in the discharge of their duties, the officials may claim qualified immunity; so long as they have not violated a clearly established right, they are shielded from personal liability."  *Camreta v. Greene*, 131 S. Ct. 2020, 2030-31 (2011) (internal quotations and citations omitted).  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, ___, 129 S. Ct. 808, 815 (2009).  Thus, "[q]ualified immunity shields an officer from suit when she makes

a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam). The inquiry into whether a particular right is clearly established "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id*. (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). At the summary judgment stage, any subsidiary facts are viewed in the light most favorable to the plaintiff, and the question of whether the officer violated clearly established law is determined by reference to the facts as so viewed. *See Champion*, 380 F.3d at 900 ("[W]here the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability."); *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988). In other words, "the nonmoving party is given the benefit of all relevant inferences at the summary judgment stage, and if a genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment on that ground." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (internal quotation omitted); *cf. Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (in resolving qualified immunity issue at the pleading stage, "the court must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law.").

Here, defendants do not argue that plaintiff's right to be free from the use of excessive force was not clearly established, nor do they argue that the unlawfulness of their actions, under plaintiff's version of events, would not have been apparent to an objectively reasonable officer. Rather, they contend that they are entitled to qualified immunity because plaintiff cannot establish that his rights were violated at all. Because defendants assert that they are entitled to qualified immunity "only on the basis that plaintiff has failed to state a federal constitutional claim" and "do not allege that

21

the rights alleged to have been violated were not clearly established[,] . . . the Court need not separately address defendants' qualified immunity argument." *Otrusina v. Crysler*, No. 2:09-CV-12828, 2010 WL 3702647, at *9 (July 29, 2010) (report and recommendation of Komives, M.J.), *magistrate judge's report adopted*, 2010 WL 3702646 (E.D. Mich. Sept. 16, 2010) (Cohn, J.).

     3.     *Claims Against Defendants Borowski and City of Eastpointe*

As noted above, it is well established that liability in a § 1983 action cannot be based on a theory of *respondeat superior*. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Here, plaintiff has not raised a genuine issue of material fact with respect to whether defendants Borowski or City of Eastpointe violated his rights.

     *a.  Defendant Borowski*

As the Sixth Circuit has explained, in order to impose § 1983 liability on a supervisory official,

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 73, 81 (6th Cir. 1995) (internal quotation omitted); *see also, Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989).

Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).  As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

Here, plaintiff has not alleged, nor has he provided any evidence to show, that defendant Borowski participated in, encouraged, or approved the alleged unconstitutional conduct.  Although plaintiff alleges that defendant Borowski, as the supervising shift commander, authorized defendants Connor and Teolis to perform a warrantless, illegal arrest in his home.[3]  As explained above, however, plaintiff cannot show that the entry of defendants Connor and Teolis into his home or his arrest violated the Fourth Amendment.   Because plaintiff cannot establish an underlying constitutional violation, he cannot establish supervisory liability with respect to defendant Borowski. *See Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992) (emphasizing "the separate character of the inquiry into the question of municipal [or supervisory] responsibility and the question whether a constitutional violation occurred."); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis added) (the "first inquiry in any case alleging municipal [or supervisory] liability under § 1983 is the question whether there is a direct causal link between a municipal policy or

---

[3]Plaintiff's claim against defendant Borowski is limited to the illegal search and arrest claim; he does not seek to impose supervisory liability on defendant Borowski with respect to his excessive force claim.

custom and the alleged *constitutional deprivation*.").[4]   Moreover, even if plaintiff could establish an underlying constitutional violation, he cannot show that defendant Borowski authorized, condoned, or otherwise participated in the alleged unconstitutional conduct.  During his deposition, plaintiff testified only that he believed defendant Borowski authorized defendants Connor and Teolis to attempt to locate plaintiff in Detroit and to arrest him.  *See* Def.'s Br., Ex. K, at 179-82.  In response to a question from defense counsel asking, "Is there anything else that Borowski did other than authorize the officer to go make the arrest?", plaintiff responded, "That was it."  *Id*. at 184.  Thus, at most, plaintiff can show that defendant Borowski authorized the other defendants to arrest him if they located him.  He cannot show that defendant Borowski authorized them to illegally enter plaintiff's home in order to effectuate the arrest.  *Cf. Provost v. City of Newburgh*, 262 F.3d 146, 155-56 (2d Cir. 2001); *Gilmore v. Trowbridge*, No. 3:08cv136, 2009 WL 649692, at *8 (S.D. Miss. Mar. 10, 2009).  *See generally*, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (in order to impose supervisory liability, plaintiff must show that supervisor participated or acquiesced in "the specific incident of misconduct.").  Accordingly, the Court should grant summary judgment to defendant Borowski.

### b.  City of Eastpointe[5]

---

[4]Although *Collins* and *Harris* both involved municipal liability, the standards for municipal and supervisory liability under § 1983 are substantially the same.  *See Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997); *Carter v. City of Philadelphia*, 4 F. Supp. 2d 386, 394 (E.D. Pa. 1998).

[5]In his complaint, plaintiff does not name the City, but rather the Eastpointe Police Department, as a defendant.  The Department is not a proper defendant, as it is merely a creature of the City and is not a legal entity capable of being sued.  *See Laise v. City of Utica*, 970 F. Supp. 605, 608 (E.D. Mich. 1997); *Pierzynowski v. Police Dep't City of Detroit*, 941 F. Supp. 633, 637 n.4 (E.D. Mich. 1996) (Gadola, J.). In such a case, however, the proper course is not to dismiss the claim, but to construe the claim as being asserted against the municipality as the real party in interest.  *See Williams v. Northfield Police Dep't*, No. 09-6192, 2010 WL 2802229, at *4 n.1 (D.N.J. July 14, 2010); *Mahan v. Huber*, No. 09-cv-00098, 2010 WL 749810, at *4 (D. Colo. Mar. 2, 2010); *Pierzynowski*, 941 F. Supp. at 637 n.4; *cf. Brandon v. Holt*, 469 U.S.

Likewise, the Court should grant summary judgment to the City.  In the context of a municipality, a plaintiff cannot establish the municipality's liability unless he shows that "deliberate action attributable to the municipality directly caused a deprivation of federal rights."  *Board of County Comm'rs v. Brown*, 520 U.S. 397, 415 (1997).  Thus, to establish municipal liability, a plaintiff must establish both (1) an underlying violation of his constitutional rights, and (2) that the violation resulted from the municipality's own deliberately indifferent policies.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (explaining that "proper analysis requires us to separate two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation."); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of unconstitutionally excessive force is quite beside the point.").  As the Court has more recently explained:

> A municipality or other local government may be liable under this section if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978).  But, under § 1983, local governments are responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S., at 665–683).  They are not vicariously liable under § 1983 for their employees' actions. *See id.*, at 691; *Canton [v. Harris]*, 489 U.S. [378], at 392 [(1989)]; *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997) (collecting cases).
>
> Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell*, 436 U.S., at 691; *see id.*, at 694. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and

464, 469-71 (1985).  In other words, by naming the Department as a defendant, plaintiff has effectively named the City.  *Cf. Haverstick Enterprised, Inc. v. Financial Federal Credit, Inc.*, 32 F.3d 989, 992 n.1 (6th Cir. 1994) ("A suit against a city police department in Michigan is one against the city itself, because the city is the real party in interest").

practices so persistent and widespread as to practically have the force of law. *See ibid.*; *Pembaur*, *supra*, at 480-481; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970). These are "action[s] for which the municipality is actually responsible." *Pembaur*, *supra*, at 479–480.

    In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton*, 489 U.S., at 388.  Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.*, at 389.

    "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cty.*, 520 U.S., at 410. Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.*, at 407. The city's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton*, 489 U.S., at 395 (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in de facto respondeat superior liability on municipalities . . . ." *Id.*, at 392; *see also Pembaur*, *supra*, at 483 (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials . . .").

*Connick v. Thompson*, 131 S. Ct. 1350, 1359-60 (2011) (parallel citations omitted).

    Here, as explained above, plaintiff cannot show that the entry into his grandfather's home by defendants Connor and Teolis and his subsequent arrest were unconstitutional.  Further, even if he could make that showing, he cannot show that the illegal entry and arrest resulted from any municipal policy that was deliberately indifferent to the rights of citizens.  Plaintiff's entire municipal liability claim is premised on an alleged policy requiring officers to confer with superior

26

officers and "bring them up to speed on what's going on in a case."  Def.'s Br., Ex. K, at 177-78.

Such a policy is not deliberately indifferent to the rights of citizens; on the contrary, such a policy

is designed to ensure good police work and provide appropriate supervision of subordinate officers.

Plaintiff concedes that he has no knowledge of the City's policies regarding Fourth Amendment

issues, and that he has no witnesses to support his unconstitutional policy claim.  *See id.*, at 183-84.

Because plaintiff cannot show that the alleged illegal entry and arrest resulted from any municipal

policy, much less one that was deliberately indifferent to the constitutional rights of citizens, the

City is entitled to summary judgment.

D.      *Conclusion*

        In view of the foregoing, the Court should grant in part and deny in part defendants' motion

for summary judgment.  Specifically, the Court should deny the motion with respect to plaintiff's

excessive force claim against defendants Connor and Teolis, and should grant the motion in all other

respects.  If the Court accepts this recommendation, the Court should also order that plaintiff, to the

extent he has not already done so, provide forthwith to defendants signed authorizations for the

release of his medical records, and should warn plaintiff that failure to so could result in dismissal

of his excessive force claim.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

        The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED.

R. CIV. P. 72(b).  Failure to file specific objections constitutes a waiver of any further right of appeal.

*Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505

(6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which

raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/Paul J. Komives_____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: March 7, 2013_____

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and   by electronic means or U.S. Mail on March 7, 2013.

s/Shawntel R. Jackson
Case Manager

28