UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEON TERRELL HENRY,

               Plaintiff,                    Case No.  11-10192

v.                                   SENIOR UNITED STATES DISTRICT JUDGE
                                   ARTHUR J. TARNOW

CITY OF EASTPOINTE POLICE DEPARTMENT,
ET AL.,                               MAGISTRATE JUDGE PAUL KOMIVES

               Defendants.
_____/

## ORDER ADOPTING IN PART REPORT AND RECOMMENDATION [72] AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [53] AND ORDERING DEFENDANTS' TO SHOW CAUSE WHY THEY SHOULD NOT BE SANCTIONED PURSUANT TO FED. R. CIV. P. 11

On March 7, 2013, Magistrate Judge Komives issued a Report and Recommendation ("R&R") [72] recommending that Defendants' Motion for Summary Judgment [53] be GRANTED as to Defendants Borowski and Eastpointe Police Department on all claims, be GRANTED as to Defendants Connor and Teolis with respect to Plaintiff's illegal search and arrest claims, and be DENIED as to Defendants Connor and Teolis with respect to Plaintiff's excessive force claims.  Both Plaintiff [73] and Defendants [74] filed objections.  Defendants also filed a response [75] to Plaintiff's objections.

For the reasons stated below, the Report and Recommendation is ADOPTED IN PART. Defendants' Motion for Summary Judgment is GRANTED as to Defendants Borowski and Eastpointe Police Department on all claims, and is DENIED as to Defendants Connor and Teolis with respect to all claims.  Defendants are further ordered to SHOW CAUSE why they should not be sanctioned for violation of Federal Rule of Civil Procedure 11.

## I. Factual Background

The R&R contains a detailed explanation of the factual background of this case, and the Court adopts this general background as set out in the R&R in full.

## II. Standard of Review

This Court reviews objections to an R&R on a dispositive motion *de novo*. *See* 28 U.S.C. §636(b)(1)(c).

Summary judgment is appropriate under Fed. R. Civ. P. 56(c)(2) where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." The facts and all inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 250 (6th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once a moving party produces evidence establishing lack of a genuine issue of material fact, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

## III. Analysis

Both Plaintiff and Defendants provide objections to the R&R. The Court will review the objections in turn.

## A. Defendants' Objections

### I. Background Facts

Defendants object only to the portion of the Magistrate Judge's R&R recommending that the Court deny dismissal of the Plaintiff's case as a penalty pursuant to Fed. R. Civ. P. 37(b)(2) because of Plaintiff's "repeated failures to provide Court[-]ordered discovery."

Plaintiff, who is incarcerated, was originally served with interrogatories mailed by Defendants on March 22, 2011. In their instant motion, Defendants allege that "Plaintiff did not respond nor object in a timely fashion." In fact, on May 5, 2011, Plaintiff filed a letter to the Court, available to Defendants, in which he requested a copy of his complaint, Defendants' answer, and an additional copy of Defendants' interrogatories because he had lost all his legal paperwork when he was moved from one part of the prison to another.

Defendants filed a Motion to Compel [12] on May 13, 2011, a week after Plaintiff filed his letter requesting another copy of their interrogatories, in which they alleged that "Plaintiff has refused and/or neglected to answer such discovery requests and are [sic] subject to the consequences for refusing to respond, as provided in FRCP 37." Defendants made no mention of Plaintiff's letter requesting another copy of the interrogatories. Defendants also stated that they had "in good faith, conferred or attempted to confer with Plaintiff by correspondence dated May 10, 2011 in an effort to obtain concurrence in the relief sought." Notably, Defendants' Motion to Compel was dated May 9, 2011, a day prior to the date they allegedly attempted to correspond with Plaintiff to obtain concurrence in their motion to compel.

On June 6, 2011, the Magistrate Judge ordered [14] Plaintiff to respond to the Motion to Compel by June 27, 2011. Plaintiff responded to Defendants' interrogatories on June 9, 2011. In his response, Plaintiff included an affidavit from his mother stating that she had refused police permission to enter her home on the night that Plaintiff was arrested. On June 21, 2011, Defendants filed a motion [16] for the Court to deem admitted Defendants' request for admissions to which Plaintiff had objected. Defendants also filed another motion to compel, arguing that Plaintiff had not responded to their interrogatories, and further arguing that Plaintiff had failed to provide them any documents in support of his claim, including medical releases. The Magistrate Judge ordered [17] Plaintiff to respond by June 27, 2011. Plaintiff's Response [18] was dated July 27, 2011 and filed on August 1, 2011. In his response, Plaintiff alleged he attempted to give Defendants' counsel various documents, including medical releases, at his deposition held on July 13, 2011, but that Defendants' counsel would not sign an affidavit stating he had received the records, and thus Plaintiff did not give him the documents. Notably, Defendants' reply [22], filed on August 9, 2011, did not respond to Plaintiff's allegations regarding Plaintiff's attempt to hand Defendants' counsel he materials sought in discovery. Plaintiff's allegations are confirmed by a transcript of his deposition:

> Q. Okay. You've handed me a document entitled Proof of Discovery Materials. Did you prepare this document?
>
> A. No.
>
> Q. Who prepared this?
>
> A. I had somebody type it out.
>
> Q. And what is this supposed to be for?
>
> A. Part of the discovery that you asked for as far as medical records.
>
> Q. It says that I have received a request for social security earnings information, a request for copy of tax return, a medical release authorization for the Gilmore Correctional Facility, medical release authorization for Boyer Road Correctional Facility, and a medical release authorization for Henry Ford Hospital.
>
> A. Right.

4

Q. I don't have any of those things. Do you have those?

A. I have them right here.

Q. Okay. Well, are you planning on handing those to me today, is that what your intent was?

A. What?

Q. Can I see those documents.

A. Are you signing the form?

Q. I'm not signing anything until I see those documents. I can guarantee you that. And then I'm not telling you whether I'm going to sign this affidavit or not. I can guarantee I'm not going to sign that affidavit.

A. Well, I'll wait until I receive that information through the mail.

Q. Do whatever you want.

MR. FERRAND: But for the record, I have been handed records deposition service medical authorizations for the Henry Ford Hospital in Detroit, Michigan, for the Boyer Road Correctional Facility, Health Care Services in Carson City, Michigan, for the Gilmore Correctional Facility, Gilmore, West Virginia, Federal Bureau of Prisons, Carl's Chop House and for IRS returns.

BY MR. FERRAND:

Q. And you want to send these through the mail to me? Is that what you're saying?

A. I was going to hand it to you now.

Q. Okay.

A. That was just a form to say that I handed them over to you.

Q. Right. It's just that I'm not going to sign any documents of this nature unless I prepare them myself. But --

A. Okay.

Q. -- you can simply prepare a proof of service for your own signature and say I handed them to the attorney on this day.

A. And I just want to make --

Q. That's how that should be --

A. I was just making it specifical (sic) of what I was giving you.

Q. Right. But this should be signed by you, not me, that you've turned them over to me on this particular day.

25 A. Okay. I'll send them through the mail.

Henry Dep. at 167-69.


The parties also discussed Plaintiff's failure to respond to the interrogatories:

5

Q. All right. Now, do you have any other 2 documents or records responsive to my interrogatories and request for production of documents that I submitted to you?

A. What do you want to see?

Q. I would note that you have not answered my interrogatories or request to produce. Do you intend to do so?

A. Yes.

Q. When do you intend --

A. You'll have those in the next week or two.

Q. And why have you waited so long to do that?

A. Because the first interrogatory, when I was filling it -- filling it out and send it to you, I was moved to another part of the prison, which didn't have an adequate law library. And I would have to request to come back over here.

Q. Why do you need a law library to answer interrogatories?

A. To make sure what you're asking me in there complies with the rules.

Q. You're not a lawyer, are you?

A. Nope.

Q. And you're not practicing law, are you?

A. No.

Henry Dep. at 170.

On August 11, 2011, Plaintiff filed several documents with the Court, including medical release authorizations and the affidavit that Defendants' counsel had refused to sign. As reflected in the transcript, it simply stated that counsel had received certain documents.

On September 20, 2011, Defendants filed a Motion to Compel and/or to Dismiss [32]. The Motion to Dismiss included the following allegations: "Plaintiff has yet to answer Interrogatories or Request for Production of Documents. Plaintiff has yet to produce authorizations for the release of medical records." Defs.' Mot. [32] at 2-3. "Defendants timely served Plaintiff with Interrogatories and Request for Production of Documents more than five months ago. Discovery is scheduled to terminate September 30, 2011. *Plaintiff has yet to respond to Defendants' discovery request*." Defs.'

Mot. [32] at 10.  (Emphasis added).  Defendants' motion did not specify to which discovery requests Plaintiff had failed to respond.

Defendants' Motions to Compel were granted in part by an Order [42] issued on February 14, 2012.  The Magistrate Judge ordered Plaintiff to respond to those interrogatories to which he had not already responded.  The Magistrate Judge indicated he would rule on Defendants' Motion to Dismiss in a separate order.

On May 21, 2012, Defendants filed a second Motion to Dismiss [51].  In their second motion to dismiss, Defendants asserted that Plaintiff had not responded to discovery requests sent on February 27, 2012.  While Plaintiff's response to the discovery request indicated he had attached medical authorizations, Defendants claimed the authorizations had not been attached.  In his Response [54] to the motion, Plaintiff indicated he had provided medical release authorization only for treatment related to his hip injury.  In their Reply [58], filed on June 11, 2012, Defendants indicated the specific medical release authorizations Plaintiff had not provided.

On May 29, 2012, Defendants filed the instant Motion for Summary Judgment  [53].

On July 13, 2012, the Magistrate Judge issued an Opinion and Order [60] denying Defendants' two motions to dismiss, noting that:

> It is not clear that plaintiff's initial failure to provide proper discovery responses and responses to defendants' Requests for Admission was the result of bad faith. Rather, plaintiff's failure to respond appears to have resulted from his lack of knowledge of the discovery rules and the assertion of good faith, albeit meritless, legal objections. The same holds true with respect to the medical authorizations, some of which plaintiff claims are irrelevant. Further, there is no suggestion by defendants that any evidence sought by the discovery requests is now unavailable due to the delay . . . [w]ith respect to the medical authorizations which are still outstanding the Court

concludes that Defendants are entitled to the medical records sought by the authorizations that plaintiff has refused to sign.

Order [60] at 6-7.

On August 16, 2012, Defendants filed a third Motion to Dismiss [66], alleging that Plaintiff had not yet responded to their requests for additional medical release authorizations. Defendants eventually withdrew this motion when Plaintiff responded and indicated that the medical release authorizations had been mailed on August 6, 2012, but that Defendants' Records Deposition Service had failed to notify them of receipt of the records.

## R&R

In the instant motion for summary judgment, which was filed prior to the Magistrate Judge's Order and Opinion on their multiple motions to dismiss, Defendants made essentially the same arguments made in their denied motions to dismiss, that Plaintiff should be sanctioned because of discovery delays through dismissal of his case. To the extent that the Magistrate Judge has already addressed Defendants' arguments concerning Plaintiff's good faith, whether Plaintiff was advised that failure to cooperate could lead to dismissal, and whether less drastic sanctions were considered, the Court adopts the Magistrate Judge's reasoning.

In their objections to the Magistrate Judge's R&R, Defendants raise an issue not presented in their motion before the Magistrate Judge:

> Plaintiff did not provide the last of the requested authorizations (which were based on the medical providers which Plaintiff had identified in discovery) to Defendants until August 6, 2012- well after the close of discovery and the filing of Defendants' Motion for Summary Judgment. [see D. 68]. Defendants are still waiting to get records relating to Plaintiff's medical care while he was incarcerated in Federal Prison. Further, once Defendants were finally able to obtain Plaintiff's medical records, they discovered that the records are filled with allusions to pre-existing injuries which

8

Plaintiff has not disclosed and for which Plaintiff has not identified his medical treaters. These pre-existing injuries include a motor vehicle accident which resulted in significant injury, a gunshot wound and head trauma arising under unknown circumstances. (See Carson City Correctional Facility Records, Ex. E; Correctional Medical Services Records, Ex. F).

Defs.' Obj. [74] at 5.

Defendants contend that they have been "severely prejudiced" by the above actions of Plaintiff because:

Defendants were denied the opportunity to pursue additional discovery based on what was in the records. Defendants were denied the opportunity to evaluate whether or not additional tasks such as an independent medical examination of Plaintiff were warranted. Plaintiff's wilful denial of access to these records prevented Defendants from being able to accurately assess Plaintiff's damage claims and hampered their ability to complete all necessary discovery. Defendants were forced to rely on Plaintiff's unsupported assertions regarding his injuries and the cause of his injuries when drafting their Motion for Summary Judgment.

Def.'s Mot. [53] at 7.

Defendants assertions of prejudice are serious. However, the Court first notes that Defendants were free to, and did, extend the cut-off date for discovery and dispositive motion submission. The Court regularly grants such motions given good cause, and Defendants were clearly aware of this fact given their past motion [50] to extend the date for dispositive motions and discovery. In addition, Plaintiff also filed a motion [27] requesting that the Court suspend cut-off dates for discovery and dispositive motions. On October 26, 2011 [37], Defendants joined the motion, but requested only 60 days of additional discovery. The Magistrate Judge granted the motion.

Accordingly, Defendants were free to move the Court for additional time for discovery if necessary, and were clearly aware of their ability to do so. That Defendants chose not to ask for

9

additional time for discovery, and indeed, chose not to join Plaintiff's motion to suspend cut-off dates for discovery, belies their complaints regarding a lack of time for sufficient discovery.

Defendants' assertions regarding the supposed concealed injuries by Plaintiff are also somewhat speculative. One of the medical records cited by Defendant is from Macomb County Jail. Defendants had access to Plaintiff's medical records from Macomb County Jail as early as August 11, 2011. Accordingly, it is unclear why Defendants did not raise the alleged undisclosed injury before the Magistrate Judge. In addition, Defendants' assertion of "head trauma arising under unknown circumstances," is highly speculative, as Defendants' sole evidence of this claim is a circled "yes" to a question on a health form "Have you fainted or had a head injury within the past 6 months?" Notably, the health form at issue was filled out on January 14, 2008, two days after Plaintiff's arrest on January 12, 2008, when he was tasered twice and, Plaintiff alleges, repeatedly punched and kicked.

Defendants also raise two other injuries disclosed by Plaintiff's additional medical records, "a motor vehicle accident which resulted in significant injury," and "a gunshot wound." The motor vehicle injury is referred to in the notes from a Michigan Department of Corrections exam on June 18, 2008, stating "Motor vehicle accident 1990's with fracture L hip and surgical repairs and has used Elavil and Motrin for discomfort with good result." Defs. Objection, Ex. E. An examination on September 12, 2008, has the following note: "Subjective Complaint 1 left hip pain left Location: hip[.] Aggravated by: activity[.] Was shot. and has rod and pins. Causing arthritis now and increased pain. Was on 150 mg elavil." An examination on September 22, 2008, has the following note: "Patient here to evaluate need for Elavil. He continues to have pain in his left hip. In 1996

patient involved in a MVA  and injured his left hip requiring surgical intervention. The Elavil helps with the pain."

All of the notes refer to a left hip injury that occurred during the same time period (1990s/1996), and all note the same treatment (use of Elavil/Motrin).  While the differing causes given for Plaintiff's left-hip injury are strange, it is undisputed that Plaintiff had significant injury to his hip prior to the alleged excessive-force incident.  Indeed, during his deposition, Plaintiff acknowledged that he had fractured his left hip in 1996 when he jumped out of the window of a building, allegedly to avoid an altercation.  *See* Henry Dep. at 116-120.  Accordingly, while the multiple explanations for his injury are puzzling, it does not appear that Plaintiff concealed the extent of his past hip injury.

Accordingly, Defendants' argument that the case should be dismissed due to Plaintiff's alleged discovery failures is unpersuasive.  Should Defendants require additional discovery, they may request it by motion.

**Plaintiff's Objection**

Plaintiff objects only to the portion of the R&R finding there is no genuine issue of material fact as to the question of illegal entry.  One of Plaintiff basic allegations in this case is that the entry by police officers into his mother's home, without her permission and without a warrant, was illegal. It is undisputed that Defendants did not have a warrant, but they argue that Plaintiff's mother did give them permission to enter the home.

In the R&R, the Magistrate Judge found, first, the Plaintiff's illegal entry claim was barred by collateral estoppel.  Second, the Magistrate Judge found that even if Plaintiff's claim was not

barred by collateral estoppel, there was no genuine issue of material fact as to whether Plaintiff's mother had given Defendants permission to enter her home.

**Collateral Estoppel**

Collateral estoppel bars a party from re-litigating an issue where "1) there is identity of parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the earlier proceeding." *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *People v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 630-31 (Mich. 1990))**.** Thus, "'[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *See Heyliger v. State Univ. & Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 853 (6th Cir. 1997) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982)). Thus, "[w]hen an issue is properly raised, . . . submitted for determination, and is determined, the issue is actually litigated . . . ." *Gilbert v. Ferry*, 413 F.3d 578, 581 (6th Cir. 2005) (quoting RESTATEMENT (SECOND) OF JUDGMENT § 27, Comment D (1982)).

On the other hand, "[a] A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action." RESTATEMENT (SECOND) OF JUDGMENT § 27, Comment E (1982)). In this vein, "the courts have declined to confer broad preclusive effect on a state court's finding of probable cause at a preliminary hearing, but rather have limited this preclusive effect to the issues actually raised and litigated at the preliminary hearing." *Redmond v. Sanders*, 858 F. Supp. 2d 809, 817 (E.D. Mich. 2012). (Rosen, J.).

In the R&R, the Magistrate Judge correctly noted that Plaintiff was not collaterally estopped by a trial verdict finding him guilty of resisting arrest, when lawfulness of the officer's arrest was not an element of the offense at the time of trial and no evidence was offered that this issue was litigated or proven by the prosecution. However, the Magistrate Judge erred in concluding that Plaintiff was collaterally estopped by a finding of probable cause at the preliminary hearing. The Magistrate Judge based his finding on a single paragraph in Defendants' Exhibit J, which is a transcript from the preliminary hearing. At the preliminary hearing the judge found probably cause for the charge of assaulting, resisting, and obstructing a police officer:

> [T]he Court finds probable cause, based on the testimony, that the crime did, in fact, occur and that the Defendant had reason to know he was performing his duties. The officer was – detective was let in by the Defendant's mother to a house and was directed up to a room in which there was supposedly the Defendant sleeping. There was then testimony regarding attempting to get the witness out from under a blanket, he failed to comply and then had to be tased and still failed to comply when he was trying to be put under arrest by failing to put his hands behind his back. So, the Court does find probable cause that this Defendant did commit that crime.

Defs.' Mot. Summ. J. Ex. J.

Even were the Court to conclude that there was a "valid, final judgment" in this preliminary hearing, and that Plaintiff had a "full and fair opportunity to litigate the issue," Defendants have presented no evidence that "the same issue was actually litigated and necessarily determine in the first proceeding." As another court has noted, "the preclusive effect of the state district court's ruling at the preliminary hearing is limited to the issue actually litigated in that proceeding." *Redmond*, 858 F. Supp. 2d at 817. In *Redmond* a plaintiff had challenged the lawfulness of a traffic stop at the preliminary hearing and had actively litigated the issue, challenging witness testimony and disputing the evidence presented by the prosecution, but had not disputed the later inventory search of his car. The *Redmond* court concluded that while collateral estoppel barred the plaintiff's later challenge to

13

the lawfulness of the traffic stop, the inventory search had not been "actually litigated" and therefore the plaintiff was not collaterally estopped.

Here, there is no evidence in the record that the question of whether Plaintiff's mother had given police officers permission into her home was actually raised, argued, discussed, or litigated. Rather, the only evidence in the record is a single statement from the judge at the preliminary hearing that "[t]he officer was – detective was let in by the Defendant's mother to a house and was directed up to a room in which there was supposedly the Defendant sleeping." A threadbare recitation of the facts does not constitute evidence that an issue was "actually litigated."

Indeed, Plaintiff, who is not represented by a lawyer, disputed this issue when he was deposed by Defendants:

> Q. And you're claiming that the officers, I assume, had no warrant which would allow them to come into your mother's home and arrest you?
>
> A. Right. They didn't have no warrant or a search warrant.
>
> Q. Okay. And would you agree with me that that issue has been litigated in the criminal trial?
>
> A. What's that?
>
> Q. And that the criminal trail went forward despite those arguments?
>
> A. No, it was not litigated, because the evidential hearing was waived.
>
> Q. Because what?
>
> A. The evidential hearing was waived.
>
> Q. Okay.
>
> A. So it was --
>
> Q. So you had a preliminary exam, waived your right to --
>
> A. No, it was not -- it was not waived at the preliminary exam.
>
> Q. Sir, the fact is that you were convicted in this case of the crimes of which you were accused in the underlying criminal proceeding.
>
> A. Okay.
>
> Q. Correct?

14

A. Okay.

Q. Okay. So you're still claiming some right to challenge whether the search was appropriate?

A. They didn't have arrest warrant or search warrant when they came to my house.

Q. Fine.

Henry Dep. at 179-80.

Accordingly, the Court finds that Plaintiff is not collaterally estopped from his claim that the entry by police officers into his mother's house was illegal.

**Genuine Issue of Material Fact**

The Magistrate Judge also found that there was no genuine issue of material fact with respect to whether Plaintiff's mother had permitted police officers to enter her home without a warrant. Plaintiff submitted an affidavit from his mother, dated March 22, 2010, stating that she had refused police permission to enter her home. While this would normally create a genuine issue of material fact for the jury, the Magistrate Judge found that it did not because:

> [I]t is clear that Ms. Henry is no longer willing to testify as to the facts set forth in her affidavit. At his deposition in this case, conducted on July 13, 2011, plaintiff testified that he has no witnesses to support his claim that the officers' entry into his home was illegal, and specifically testified that his mother was no longer willing to testify on his behalf in this case. See Def.'s Br., Ex. K, at 187. By plaintiff's own testimony, then, it is clear that plaintiff's mother will not be called by him at a trial in this case and that he can present no evidence in support of his illegal arrest claim other than the police reports and trial transcript . . . [h]ere, plaintiff's own testimony establishes that his mother is "no longer . . . willing . . . to testify at trial," and justifies disregarding Ms. Henry's affidavit. Thus, plaintiff can present no evidence to create an issue of material fact with respect to whether defendants had Ms. Henry's consent to enter the home and search for plaintiff.

Report and Recommendation at 10-11.

15

Plaintiff objects that his testimony at deposition should not be used against him because he has not seen a transcript of the deposition. He also notes that he has filed an affidavit signed by his mother stating that she would testify that she did not give police officers permission to enter her home. Plaintiff also alleges that Defendants deposed his mother on August 15, 2011 (Plaintiff was deposed on July 13, 2011) and that she told Defendants she would testify on his behalf. Plaintiff alleges that he spoke to his mother after her deposition and she once against told him she would testify at trial that she did not give permission to the police to enter her home.

The Magistrate Judge's R&R was based upon Defendants' representation in their brief that "Plaintiff admittedly has no witnesses to support his illegal entry claim." Defs.' Mot. Summ. J. at 7. This statement is, according to Defendants, supported by Plaintiff's deposition:

> Q. Okay. And are there any other witnesses to support your allegations that the search or arrest were illegal?
> A. Support?
> Q. Yes.
> A. Witness as far as testifying to what?
> Q. Testifying to some violation of the constitution related to the search or arrest.
> A. I'm going to use the detectives.
> Q. Okay. Anybody else?
> A. No.
> Henry Dep. at 185-86.

Notably, the term "illegal entry" does not appear in the Defendants' questions to Plaintiff. Plaintiff is *pro se*. The Court is not persuaded that Plaintiff's failure to raise the potential testimony of his mother in response to question regarding whether there will be testimony "to some violation of the constitution related to the search or arrest" establishes that there is no genuine issue of material

fact, particularly given Plaintiff's repeated references in his briefs to his mother's affidavit and willingness to testify.

Defendants respond to Plaintiff's objections by arguing that "Plaintiff further testified that he had no witnesses to support his illegal entry claim and, specifically, *that his mother had told him that she 'wouldn't be able to testify on [his] behalf.'*" Defs.' Resp. to Obj. at 5 (emphasis added). Thus, Defendants argue, Plaintiff stated during his deposition that his mother would not testify at his civil trial, contradicting his mother's earlier affidavit. Defendants argue that Plaintiff's attempt to "contradict his deposition testimony" by objecting that his mother will, in fact, testify does not create a genuine issue of material fact. Defendants do not respond to Plaintiff's allegation that Defendants deposed his mother and that she stated that she would testify in the instant case.

Defendants have misrepresented Plaintiff's deposition testimony to the Court. The only discussion regarding Plaintiff's mother during his deposition concerns discussion of whether she testified at Plaintiff's *criminal trial*:

> Q. Your mother, did your mother testify at trial?
> A. No, she didn't.
> Q. And can you tell me why she did not testify at trial?
> A. Because my lawyer refused to put her on the stand.
> Q. Okay. And do you know why he refused to put her on the stand?
> A. No.
> Q. Did you have a discussion with your mother about whether she would testify?
> A. Yes.
> Q. What did the two of you discuss?
> A. *No, she just told me she wouldn't be able to testify on my behalf.*

Defs.' Ex. K at 186-87 (emphasis added).

In their brief to this Court, Defendants have plucked the last sentence from their questions regarding Plaintiff's criminal trial and have used the out-of-context quote "she just told me she wouldn't be able to testify on my behalf," to attempt to persuade the Court that there is no genuine issue of material fact.  Defendants argue, based on the above, that "At his deposition . . . Plaintiff testified unequivocally that his mother would not be testifying on his behalf."  Defs.' Resp. to Obj. at 2.  This misleading tactic is not persuasive and, as explained below, may result in sanctions to Defendants' counsel.        Given his mother's affidavit, Plaintiff has demonstrated a genuine issue of material with respect to the question of whether Defendants lawfully entered Plaintiff's mother's home on the night of Plaintiff's arrest.  Summary judgment is therefore inappropriate on this issue.

### Order to Show Cause.

Federal Rules of Civil Procedure 11(b)(3) and 11(b)(4) state:

Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

In addition, Rule 11 "creates and imposes upon counsel an affirmative duty of investigation both as to law and fact before filing."  *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. 1987) (citing *Golden Eagle Distrib. Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1536 (9th Cir.1986)).

18

Similarly, the Michigan Rules of Professional Conduct prohibit misstatements or misrepresentations of fact:

> Rule: 4.1 Truthfulness in Statements to Others
>
> In the course of representing a client, a lawyer shall not knowingly make a false statement of material fact or law to a third person.
>
> MISREPRESENTATION
>
> A lawyer is required to be truthful when dealing with others on a client's behalf, but generally has no affirmative duty to inform an opposing party of relevant facts. A misrepresentation can occur if the lawyer incorporates or affirms a statement of another person that the lawyer knows is false.

Mich. R. of Prof'l Conduct 4.1.

Defendants' misrepresentation of Plaintiff's testimony, in contradiction to an earlier piece of evidence submitted by Plaintiff, and in an attempt to secure summary judgment, is unacceptable. Particularly in a case involving a *pro se* and incarcerated Plaintiff, the Court is deeply disturbed by Defendants' distortion of the record.  Accordingly, Defendants are **HEREBY ORDERED TO SHOW CAUSE** at a hearing on Thursday, May 2, 2013, at 3:00 PM, why they should not be sanctioned for violation of Rule 11.

In particular, Defendants should consider whether their affirmative misrepresentation to the Court that, at deposition, Plaintiff stated that his mother would not testify on his behalf was in accordance with their duty of truthfulness and was "warranted on the evidence."

Defendants are further ordered to provide the Court with a transcript of their deposition of Plaintiff's mother, Janice Henry.

19

## Conclusion

For the reasons stated above, the Report and Recommendation is **ADOPTED IN PART**. Defendants' Motion for Summary Judgment [53] is **GRANTED** as to Defendants Borowski and Eastpointe Police Department on all claims, and is **DENIED** as to Defendants Connor and Teolis with respect to all claims.

In addition, as Plaintiff has now twice survived dispositive motions, and the case appears to be proceeding toward trial, the Court has determine that *pro bono* counsel should be appointed to represent Plaintiff. Accordingly, this case shall be **STAYED** until counsel has been secured to represent Plaintiff.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: April 5, 2013

_____

### CERTIFICATE OF SERVICE

I hereby certify on April 5, 2013 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on April 5, 2013: **Deon Terrell Henry.**

s/Michael E. Lang
Deputy Clerk to
District Judge Arthur J. Tarnow
(313) 234-5182